IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| PATRICIA ANN JARRETT, | § | |
|            Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION V-04-019 |
| | § | |
| METROPOLITAN LIFE INSURANCE | § | |
| COMPANY AND IBM CORPORATION | § | |
| LONG TERM DISABILITY PLAN | § | |
| | § | |
|            Defendants. | § | |
| | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendants' Metropolitan Life Insurance Company ("MetLife") and IBM Corporation Long Term Disability Plan's ("the Plan") Motion for Summary Judgment (Dkt. #15). The Court, having considered the motion, the responses of the parties, and the applicable law, is of the opinion that the motion should be GRANTED.

**Factual and Procedural Background**

In February 1998, Plaintiff, Patricia Ann Jarrett ("Jarrett"), began working as an Inside Sales Specialist for IBM. As an Insides Sales Specialist, she conducted sales over the phone, consequently sitting for long periods of time in one position.

In May 2002, after experiencing increased pain and discomfort in her back and neck, Jarrett had MRIs conducted on her lumbar, thoracic and cervical spine. After reviewing the results of the MRIs, Dr. Brent Alford, Jarrett's neurosurgeon, diagnosed Jarrett with "cervical myelopathy from her cervical stenosis" and recommended that Jarrett have a cervical fusion at C4-5, C5-6, and C6-7. Jarrett's last day of active employment was on July 5, 2002, and on July 9,

2002, Jarrett underwent back surgery.  Following the back surgery, Jarrett was physically unable to return to work as originally planned.  She applied for, and received, IBM Sickness & Accident Benefits for twelve months.  This twelve-month waiting period qualified Jarrett for long-term disability benefits under the Plan.

In September 2002, Jarrett returned to Dr. Alford for a follow-up visit.  The radiological images of Jarrett's cervical spine showed "good position and alignment of the surgical hardware and interbody bone graft material."  Jarrett complained to Dr. Alford, however, of headaches, neck pain and stiffness.  Jarrett also complained that she was having left arm numbness, pain in her mid-back and lower lumbar spine with some pain in her left leg.  Dr. Alford recommended that Jarrett be evaluated for epidural steroid injections for the T10-11disc.

One month later, in October 2002, Jarrett visited Dr. Alford for another follow-up.  Jarrett again complained of pain in her neck and shoulder region as well as in her left arm.  Dr. Alford noted that Jarrett had limited range of motion in her cervical spine and indicated that she had some deconditioning.  Dr. Alford noted that muscle stimulation did not appear to help and recommended that Jarrett undergo physical therapy for both cervical and lumbar strengthening.  Jarrett attended three sessions of physical therapy before discontinuing her treatment because of the distance she was required to travel.

Jarrett had an additional MRI of her cervical spine and EMG/NCS on December 12, 2002.  Dr. Alford examined her again on December 23, 2002.  At that visit, Jarrett indicated that her pain had improved for about a week after each steroid injection.  Dr. Alford noted that the December 12 MRI showed that Jarrett's spinal cord was open and the EMG/NCS was "essentially normal except for some mild right median sensory neuropathy."  Although Jarrett continued to complain of neck pain, Dr. Alford noted that it was his belief that her fusion was stable and that she probably

just had some chronic muscle strain and sprain.  He recommended further therapy but indicated that Jarrett wanted to wait on that for the time being.

>Jarrett applied for LTD benefits under the Plan in May 2003. Under the Plan,

>>totally disabled means that during the first 12 months after you complete the waiting period, you cannot perform the important duties of your regular occupation with IBM because of a sickness or injury . . .  You must be under the appropriate care and treatment of a doctor on a continuing basis.  At your own expense, proof of disability, satisfactory to Metropolitan, must be submitted to Metropolitan. "Your regular occupation with IBM" means the regular occupation you had with IBM as of the last day of active status.

To support her claim, Jarrett relied on the same medical records she had submitted for her Sickness & Accident Benefits, as well as an attending physician statement signed by Dr. Alford on June 4, 2003.  The physician's statement notes that Dr. Alford last examined Jarrett on December 23, 2003.  It further indicated that Jarrett had no limitations in walking, standing, sitting, changing positions, reaching, pushing pulling, climbing, bending, stooping, squatting, or concentrated visual attention.  The only limitations listed were that Jarrett was limited in her ability to commute or drive, be in enclosed spaces and lifting more than 15 pounds.  Despite checking that Jarrett had no limitations, Dr. Alford checked the box on the form indicating that she had severe limitation of functional capacity, was incapable of performing a sedentary job, and was totally disabled.

>On July 8, 2003, Jarrett's claim for LTD benefits was denied.  In a letter dated July 8, 2003, MetLife notified Jarrett of the denial and informed her that she had the right to appeal the decision.  The letter also stated that should she desire to appeal, Jarrett should submit any additional medical or vocational information and any facts, data, questions or comments Jarrett deemed appropriate for MetLife to review in considering her appeal.  Specifically, MetLife indicated that Jarrett might consider submitting all medical records from Dr. Alford after December 23, 2002; any physical therapy records, if available; any orthopedic consultations, if

available; and the results of a myelogram test, if available.

Jarrett immediately appealed the denial of her LTD benefits claim on July 14, 2003. In addition to the records submitted with her original claim, Jarrett submitted a revised attending physician form signed by Dr. Alford, medical records from Dr. Debra T. Combs Cantrell, medical records from Dr. R. Mills Roberts, physical therapy reports, lab reports, and the results of her MRIs and EMG tests. On August 22, 2003, MetLife hired Dr. Robert Menotti to review Jarrett's entire file. Dr. Menotti concluded that there was insufficient evidence to support Jarrett's inability to perform the important duties of her regular occupation. Based on its review of all the medical and vocational information and Dr. Menotti's assessment, MetLife upheld the denial of Jarrett's claim for LTD benefits. In its denial letter dated October 9, 2003, MetLife's Case Management Specialist explained that MetLife, after reviewing the records, had determined that there was not enough medical documentation in the record to substantiate restrictions and limitations precluding Jarrett from performing the essential duties of her job. Specifically, MetLife informed Jarrett, through the letter, that there were no objective clinical findings, such as diagnostic test results, office notes or treatment plans from Dr. Alford after the December 23, 2002 visit. As such, MetLife determined that the original denial of Jarrett's claim was appropriate.

Jarrett filed this lawsuit against MetLife on March 9, 2004 to challenge the denial of LTD benefits. MetLife filed its original answer on April 23, 2004. On July 15, 2004, Jarrett amended her lawsuit to include the IBM Corporation Long Term Disability Benefits Plan. On January 7, 2005, Defendants filed the pending motion for summary judgment. Plaintiff's response to the motion included a request to conduct additional discovery. On February 17, 2005, the Court issued an order allowing Plaintiff to conduct the requested discovery and ordering both parties to submit supplemental briefing after the discovery was completed. The discovery has been

completed. The Court has received the supplemental briefing and finds that the motion is now ripe for ruling.

## Standard of Review

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations," or "unsubstantiated assertions," such as the bare

allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## Discussion

Although ERISA authorizes a district court to review denials of claims (29 U.S.C. § 1132(a)(1)(B)), the statute does not specify the appropriate standard of review. *Vega v. Nat'l Life Ins. Services, Inc.*, 188 F.3d 287, 295 (5th Cir.1999)(en banc). The Fifth Circuit, however has made it clear that "when an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion." *Id*. at 295; *see also Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Although the Plan describes this deferential standard of review as arbitrary and capricious, the Fifth Circuit has stated that there is "only a semantic, not a substantive, difference" between it and *Firestone's* "abuse of discretion" standard. *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 635 n. 7 (5th Cir.1992). The parties in this case agree that the sole issue to be determined is whether the Plan administrator's decision to deny benefits was arbitrary and capricious.

As a threshold matter, Defendant objects to the summary judgment evidence presented by Plaintiff in her supplemental response to the motion for summary judgment.  Specifically, Plaintiff seeks to introduce the deposition testimony of the individual who reviewed her denial of benefits claim.  Defendant argues that this evidence is inadmissible in this case because the Court is required to consider only the administrative record in determining whether the plan administrator acted in an arbitrary and capricious manner.

A long line of Fifth Circuit cases stands for the proposition that, when assessing factual questions, the district court is constrained to the evidence before the plan administrator. *Meditrust*

*Financial Services Corp. v. Sterling Chemicals, Inc.*, 168 F.3d 211, 215 (5th Cir.1999); *Schadler v. Anthem Life Insurance Company*, 147 F.3d 388, 394-95 (5th Cir.1998); *Thibodeaux v. Continental Casualty Insurance*, 138 F.3d 593, 595 (5th Cir.1998); *Barhan v. Ry-Ron Inc.*, 121 F.3d 198 (5th Cir.1997); *Bellaire General Hosp. v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 828-29 (5th Cir.1996); *Sweatman v. Commercial Union Insurance Co.*, 39 F.3d 594, 597-98 (1994); *Duhon v. Texaco Inc.*, 15 F.3d 1302, 1306-07 (5th Cir.1994); *Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 101-02 (5th Cir.1993); *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 639 (5th Cir.1992). The case law also makes it clear that the plan administrator has the obligation to identify the evidence in the administrative record and that the claimant may then contest whether that record is complete. *See, e.g.*, *Barhan*, 121 F.3d at 201-02. Once the administrative record has been determined, the district court may not stray from it except for certain limited exceptions. To date, those exceptions have been related to either interpreting the plan or explaining medical terms and procedures relating to the claim. Thus, evidence related to how an administrator has interpreted terms of the plan in other instances is admissible. *See Wildbur*, 974 F.2d at 639 & n. 15(compiling cases). Likewise, evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim would be equally admissible. However, the Court is precluded from receiving evidence to resolve disputed material facts--i.e., a fact the administrator relied on to resolve the merits of the claim itself. *Vega*, 188 F.3d at 299.

  The excerpts from the deposition of Jessica Maikranz that Plaintiff seeks to introduce argue that Maikranz was not qualified to review Plaintiff's claims because she holds only a high school diploma and is a licenced practical nurse, rather than a physician. This information, however, does not fit within one of the limited exceptions recognized by the Fifth Circuit for

7

allowing evidence outside the administrative record.  Although an argument could be made that this evidence relates in some way to a claim that Plaintiff was treated differently, or that her claim was analyzed differently from other claimants, this argument has not been presented.  Likewise, although Plaintiff makes the claim that it was "common" for the individual reviewing a claim to discuss the claim with others, there is no evidence to suggest that this was a requirement or that it was standard practice.  Nor is there evidence to suggest that the final decision to deny benefits would have been different, given the different levels of review to which Plaintiff's claim was subjected.  Finally, the Court finds that Maikranz's testimony as to whether she considered the June 4, 2003 visit in her analysis to be inadmissible in this case.  As the Fifth Circuit noted in *Vega*, the Court is precluded from receiving evidence to resolve a disputed fact matter.  Although Plaintiff makes the argument that the June visit should have been considered, and this argument is allowed in an ERISA case, the additional deposition testimony is inadmissible for the purposes of showing that the failure to consider the visit was arbitrary and capricious.  Furthermore, the Court notes that Plaintiff, while presenting each of these pieces of evidence for the Court's consideration, provides no briefing or support for the argument that the actions taken by the Plan administrator are arbitrary and capricious.  There is no link to some common procedure or practice to which the Court can link this information.  Rather, it is presented in such a way that the Court can only assume that Jarrett intends to make an argument indicating that MetLife somehow strayed from its normal procedures.  Without documentation, evidence and briefing to support such a contention, however, the evidence Jarrett attempts to submit is inadmissible.

     The Court now turns its attention to the issue identified by the parties: whether the plan administrator's denial of benefits was arbitrary and capricious.  The law requires only that substantial evidence support a plan fiduciary's decisions, including those to deny or to terminate

benefits, not that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim of disability. *Ellis v. Liberty Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004) (citing *Meditrust Fin. Servs. Corp. v. Sterling Chem., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999)). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Deters v. Sec. of Heath, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986)(internal citation omitted)). The Fifth Circuit, in *Ellis*, stated that it was "aware of no law that requires a district court to rule in favor of an ERISA plaintiff merely because he has supported his claim with substantial evidence, or even with a preponderance. If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail." *Ellis*, 394 F.3d at 273.

Plaintiff initially applied for LTD benefits on May 21, 2003, claiming that she was unable to "sit for more than ½ hour & unable to hold [her] neck up for long periods" due to severe headaches, neck pain, middle and lower back pain, arm, finger, foot and leg pain, numbness in her hands, and dizzy spells with loss of balance. The administrative record shows that Jarrett did not submit any evidence in support of her claim of LTD benefits for any time period between December 23, 2002 and June 2003. Rather, the record reflects that the medical records submitted are dated from June 2, 2002 through December 23, 2003. As a result, MetLife denied the claim and, in its letter explaining its decision, stated that Jarrett might consider submitting any and all medical records from visits to Dr. Alford after December 23, 2002; physical therapy records, if available; orthopedic consultations, if available; and myelogram tests, if available.

Jarrett's appeal request stated that she had lost about one half range of motion in her neck, that she could not hold up her head for over one half hour, and that Dr. Alford had incorrectly filled out the attending physician's statement dated June 4, 2003. Dr. Alford's revised report

changed Jarrett's limitations completely, indicating that she should not pick up anything and that she should avoid all activity except limited standing, sitting and changing positions. Jarrett also submitted additional documentation in the form of reports from three doctors, physical therapy notes, and various lab tests and results. MetLife, however, noted that, except for one report from Dr. Cantrell and one from Dr. Roberts, all the medical records submitted were from April 2001 through December 23, 2002.

Based on the lack of medical support provided by Jarrett, MetLife concluded that the limitations included on the physician's statement signed by Dr. Alford were not supported by medical evidence. The Court does not find that this decision was arbitrary or capricious. First, the Court notes, as MetLife points out, that there are no doctor's notes within the administrative record of any visit with Dr. Alford after December 23, 2002. Even assuming that Jarrett saw Dr. Alford on June 4, 2003 when he filled out the original physician's statement, there are no treatment notes, no follow-up notes, no observations and no recommendations to substantiate the claim that Jarrett is completely disabled, as the form suggests. Furthermore, the limitations on the form are in direct contrast to the limitations and recommendations indicated by Dr. Alford on December 23, 2002, which is the last set of treatment notes provided by Jarrett in conjunction with her treatment by Dr. Alford. The notes from December 23, 2002 indicate that Jarrett's fusion was stable and, although she complained of neck pain, Dr. Alford believed it was chronic muscle strain that would improve with physical therapy. Jarrett did not provide MetLife with any physical therapy records after the December 23, 2002 recommendation. In fact, Dr. Alford notes that Jarrett indicated she wanted to forego physical therapy for the immediate future.

Although Jarrett argues that she was under continuing medical care, the record reflects that from December 23, 2002, when she last saw Dr. Alford, through the date of her initial application,

Jarrett had four doctors' appointments with three different doctors.  None of these doctors treated Jarrett for back or neck pain.  Instead, Dr. Cantrell examined Jarrett for mild, "musculoskeletal tension type" headaches.  Dr. Mills examined Jarrett for right elbow, shoulder, and wrist pain.  Dr. Margaret Walter, Jarrett's family physician, examined Jarrett for right wrist pain and possible carpal tunnels' syndrome.  Dr. Walter also examined Jarrett for anxiety and depression on a different occasion.  Even taking these examinations together, the medical records do not provide substantiation for the complete range of limitations listed by Dr. Alford on his revised physician's statement.

MetLife's decision to deny LTD benefits is also supported by the independent review of Jarrett's file by Dr. Menotti, a specialist in internal medicine and general surgery.  Jarrett argues that her doctors' opinions should be given greater weight in the analysis because Dr. Menotti never examined Jarrett herself, but rather examined only the records from the other doctors.  The Fifth Circuit, in *Vercher v. Alexander & Alexander Inc*., rejected this type of argument, in light of the Supreme Court's holding in *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003).  The Supreme Court in *Nord* held that ERISA does not require plan administrators to accord special deference to opinions of treating physicians. The court stated,

> "[p]lan administrators may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.* at 1966-67.

Thus in *Vercher*, the court rejected plaintiff's argument that the opinions of her treating physicians should outweigh the opinion of the doctors hired by the plan administrator.  *See also Gooden v. Provident Life & Accident Ins. Co.*, 250 F.3d 329, 335 (5th Cir. 2001); *Walker-Stewart v.*

*Federal Express Corp.*, Civ. No. H-04-2187, 2005 WL 1185799 (S.D.Tex. April 20, 2005).  Dr. Menotti's conclusion thus constitutes evidence, even if disputable, that clearly supports the basis for denial.  *See Walker Stewart*, 2005 WL 1185799 at *6 (citing *Lain v. UNUM Life Ins. Co of America*, 279 F.3d 337, 342 (5th Cir. 2002) (quoting *Vega*, 188 F.3d at 299)).

As an alternative argument, Jarrett's response to the motion for summary judgment poses a series of questions as to why the plan administrator did not take certain steps to clarify the administrative record or learn more about her treatment.  The Court construes these questions to be an argument on Jarrett's part in support of requiring the plan administrator to conduct a "reasonable investigation" into an individual's claims.  The Court notes, however, that the terms of the Plan make it clear that the individual seeking LTD benefits is required, at his or her own expense, to provide the documentation necessary to satisfy MetLife of their eligibility.  Further, the Fifth Circuit Court of Appeals, sitting *en banc*, rejected such a requirement in *Vega v. National Life Insurance Services*.  The court, reversing the three-judge panel's determination that a "reasonable investigation" requirement should be imposed, held that

> A rule that permitted such a result would be at odds with the Supreme Court's instruction in *Bruch* to review such determinations under an abuse of discretion standard--a standard that demands some deference be given to the administrator's decision. Such a rule would also violate basic principles of judicial economy. There is no justifiable basis for placing the burden solely on the administrator to generate evidence relevant to deciding the claim, which may or may not be available to it, or which may be more readily available to the claimant. If the claimant has relevant information in his control, it is not only inappropriate but inefficient to require the administrator to obtain that information in the absence of the claimant's active cooperation.

The Court thus finds that Jarrett's argument in favor of requiring MetLife to conduct a reasonable investigation is unfounded.  The case law, and the terms of the Plan, thus make it clear that Jarrett was responsible for submitting adequate documentation to support her claim for disability.  The

Court further finds that Dr. Menotti's independent review of Jarrett's medical records provides a substantial basis for the Plan administrator's denial of benefits.  As such, the Court finds that the administrator's decision was not arbitrary and capricious.

## Conclusion

For the reasons outline above, Defendants' Motion for Summary Judgment is GRANTED. A final judgment will be entered on even date herewith.

It is so ORDERED.

Signed this 29th day of June, 2005.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE